## Acme Coal Company v. Susie Kusnir, Adm'x.

1. NEGLIGENCE—*Not Established by the Evidence.*—From a careful consideration of all the evidence in this case, giving the plaintiff the benefit of all legitimate inferences to be drawn therefrom, the court holds that appellee has not made out a case of negligence against appellant, and that the motion to exclude the evidence and direct a verdict for the defendant should have been allowed.

2. EVIDENCE—*As to the Possibility of Preventing an Accident.*—In a suit against a coal company for injuries caused by falling stones, evidence of experts to show that there is no method known to miners whereby the danger arising from falling stones can be entirely obviated, is proper.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in this court at the May term, 1897. Reversed, with finding of facts. Opinion filed September 20, 1897.

REEVES & BOYS and DAVID ROSS, attorneys for appellant.

GEO. W. W. BLAKE and GEO. E. GLASS, attorneys for appellee.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case to recover damages alleged to have been sustained by the appellee as widow of John Kusnir, deceased, who was killed on June 4, 1895, by the falling of a stone from the roof of a passageway in the coal mine of appellant, in which deceased was employed at the time of his death.

The declaration contains several counts, and the gist of the negligence charged against appellant is a failure to use reasonable care to see that the roof of the mine and the passageways therein were sufficiently propped, so as to prevent its falling and doing injury to the men employed therein, including appellee's intestate.

There was a trial by jury, resulting in a verdict in favor

of appellee for $2,500. A motion for a new trial being overruled, there was judgment on the verdict, and the defendant appealed to this court.

Various errors are assigned upon the record, but the only one we care to consider especially is, the refusal of the court, at the close of all the evidence in the case, to exclude it and direct a verdict for the defendant; such a motion having been made by appellant and properly preserved in the record. This motion submitted to the court the question as to whether or not, all the evidence being considered, and giving the plaintiff the benefit of all legitimate inferences to be drawn therefrom, she had proven a cause of action. To the consideration of this question we have given full and earnest attention, and upon a careful reading of all the evidence, we are constrained to hold that appellee has not made out a case of negligence against appellant.

The facts of the case, as shown by the evidence, appear to be substantially as follows: Appellant is a corporation operating a coal shaft just east of the city of Streator, in La Salle county. This shaft was about one hundred feet deep and from the bottom of the shaft, entries were driven in various directions. From these entries, and at right angles thereto, rooms are turned or driven, and in each room the coal is gotten out by the miners, sometimes one man, and sometimes two men, working in each room. The plan adopted for mining, in the mine in question, was what is known as the double-entry system; that is, two parallel entries are driven in the same direction and about twelve feet apart, leaving a pillar or rib of coal between the two. From time to time an opening is made through this rib of coal, thus connecting the two entries, and these openings are called cross-cuts. The object of this system is to allow a free circulation of air forced through these various openings and passageways, by means of a fan or other appliance, from the bottom of the shaft. The rooms in appellants' mine were about twenty feet wide, and between the rooms a rib, or pillar of coal, was left, about nine feet wide.

At the time of the accident there was in the mine an

entry, known as the " first right entry," and another running parallel with it, called the " second right entry." From the first entry a number of rooms had been turned, which were numbered, commencing with No. 1, where the entry started.

At the time of the accident Mr. Atkinson was manager of the mine, with power to employ and discharge men, and had general supervision of the mine. Robert Mc-Donald was pit boss and had immediate charge of the work. William Gray was the fire boss, and it was his duty to examine the mine each morning before the men went to work, to see that it was free from gas, and that the roadways were in a safe condition, and to make a written report of his inspection, and leave the report where men employed in the mine could have the opportunity to see it.

On the day of his death, deceased applied to appellant for employment, which he received, and the pit boss, Mc-Donald, directed John Bakolar, one of the miners, to show deceased to room No. 8, on the first right entry, where he could go to work. Bakolar worked in the next room, No. 7. After showing Kusnir to room No. 8, Bakolar and his mate (or " butty, " as he called him) went to work in their room, and in about five minutes Kusnir came into No. 6, where he stayed about half an hour, and then left, saying he was going home. About thirty minutes after Kusnir had gone Bakolar heard some one calling in the entry, and upon going there found Kusnir between rooms Nos. 4 and 5, with a large piece of rock, which had fallen from the roof, on top of him. He was taken from the mine to his home and died the same evening. The evidence shows he was an experienced miner, and had worked in coal mines in and about Streator for several years.

The only evidence tending to show negligence on the part of appellant is the testimony of two witnesses, Andrew Palanos and Michael Dutko, Hungarians and fellow countrymen of deceased.

We are bound to say that the testimony of these two witnesses is overwhelmingly contradicted and overcome by the

testimony of a much larger number of witnesses, having certainly as full opportunity of observation as Palanos and Dutko, and apparently fully as truthful and honest. The testimony of these two witnesses tended to show that they had observed an unsafe place in the roof of the passageway prior to the accident to deceased, but they are not certain or definite as to the exact location, even though it be conceded they had seen such unsafe place, and their testimony, taken in its entirety, leaves it uncertain as to whether the place they claimed to have observed was the precise spot where Kusnir was hurt or not. On the whole, we think their testimony is so uncertain and improbable as to be unreliable.

On the other hand, the witness Gray, fire boss for appellant, testified to having made a careful inspection of the mine on the day of the accident, and a test of the roof at the particular place where deceased was hurt, by sounding it in the usual way, and found it all right, and that there were no cracks in the roof at that point. Of this inspection the witness made a report as required by law. He also testifies that the break in the stone which killed deceased was a fresh break. On cross-examination, he swears that there were props at this particular place, with cap pieces on the props, and a cross-bar right behind it, and that they couldn't get more timber under it to make it any safer. This man's long experience, as a miner for thirty-five years, and as fire boss for six years, qualifies him to speak as an expert on matters of this nature. Robert McDonald, the pit boss, testified that he passed under that roof twelve or fourteen times that afternoon, and that there was no break in it, and nothing to indicate that it was unsafe and liable to fall.

Thomas C. Cummings, State inspector of mines for the district in which appellant's mine is located, was notified of the accident by telegram, and went to the mine to make an examination of the place where Kusnir was hurt. He found the stone that killed deceased, which he calls " free stone," and in his opinion the break was a fresh one, and he gives it as his opinion the stone was pinched off, the prop under

it acting as a fulcrum. From his testimony it would appear that even had there been a cross-bar on top of the two props, it would not have prevented the fall of the rock. He further swears that the place where the rock fell seemed to be secured in the ordinary manner in which such places are secured.

From a careful consideration of all the evidence, we fail to see wherein appellant neglected any duty it owed to deceased, in using ordinary care to properly support the roof of the mine where he got hurt. No doubt such accidents occur sometimes, when all proper precautions are used to avoid them, and we are of the opinion such was the fact in this case. However unfortunate the accident was for appellee, we do not think appellant was responsible for it. Evidence was offered from these expert witnesses to show that there is no method known to miners whereby the danger arising from falling stones, occasioned by the settling of the roof above, can be entirely obviated, but the court refused to admit it, and in this we think there was error. However, the very nature of the business, and the common experience of men engaged in it, satisfies us that this is true, and although this evidence was excluded, there is enough in the record to convince us that the accident to Kusnir was not the result of any want of reasonable care on the part of appellant.

In our judgment, appellee has not proven, by a preponderance of the evidence, that the death of her intestate was caused by the negligence of appellant as charged in the declaration. We think the court should have sustained appellant's motion to direct a verdict in its favor, and it was error to refuse it. In this view of the case we deem it unnecessary to discuss any of the other errors assigned.

The judgment will be reversed.

FINDING OF FACTS TO BE MADE A PART OF THE JUDGMENT.

We find as a fact that the deceased, John Kusnir, came to his death as the result of an accident not attributable to negligence or want of ordinary care on the part of appellant.

And we further find as a fact, that the appellant had used all reasonable care to have the roof of the mine, at the place where deceased was injured, in a proper and safe condition, and that it was in a reasonably safe condition at the time of the accident which caused his death.